UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Paul Musgrove,                              )
                                            )
        Plaintiff,                          )
                                            )
v.                                          ) No. 17 CV 50117
                                            )
Nancy A. Berryhill,                         ) Magistrate Judge Iain D. Johnston
Acting Director of Social Security,         )
                                            )
        Defendant.                          )

## MEMORANDUM OPINION AND ORDER

The Claimant brings this action under 42 U.S.C. §405(g), seeking remand of

the decision by Respondent, Nancy A. Berryhill, Acting Commissioner of Social

Security ("Commissioner"), denying the Claimant's application for disability

insurance benefits under Title II of the Social Security Act ("SSA") and denying the

Claimant's application for supplemental security income under Title XVI of the

SSA. This matter is before the Court on cross-motions for summary judgment.

(Dkt. #12, 17).

The Claimant argues that the Commissioner's decision denying his

applications for benefits should be remanded for further proceedings because the

Administrative Law Judge's ("ALJ") decision is not supported by substantial

evidence. The Commissioner argues that the ALJ's decision should be affirmed

because it is supported by substantial evidence. For the reasons set forth more fully

below, the Claimant's motion for summary judgment is granted, and the Commissioner's motion is denied. The matter is remanded to the Commissioner.

# I. BACKGROUND

## A. Procedural History

On October 29, 2013, the Claimant filed the applications for disability alleging a disability onset date of October 29, 2009, due to back problems, depression, anxiety, and knee problems. R. 59-60. On February 3, 2014, the applications were denied. R. 17. The Claimant filed requests for reconsideration, which were denied on October 2, 2014. R. 134, 139. On November 4, 2014, the Claimant filed a timely request for a hearing. R. 144. The ALJ conducted a video hearing on February 18, 2016, in Evanston, Illinois. R. 17, 33. Although the hearing was conducted in Evanston, the Claimant appeared by video in Rockford, Illinois. R. 17. The Claimant and Vocational Expert Tobey Andre testified at the hearing. R. 17, 34. In addition, although he did not testify, medical expert Dr. Mark I. Oberlander, Ph.D. was present at the hearing. R. 17, 35. The ALJ also considered the Disability Determination Reports prepared by the state agency consultants dated October 1, 2013, and January 30, 2014. R. 24-25, 59-115.

On May 6, 2016, the ALJ issued a decision denying the claims for benefits. R. 27. On June 6, 2016, the Claimant filed a timely request to review the ALJ's decision. R. 13. On March 16, 2017, the Appeals Council denied the review, making

the ALJ's decision the final decision of the Commissioner.  R. 1-5.  Thereafter, the Claimant filed this appeal pursuant to 42 U.S.C. §405(g).

B. Hearing Testimony

    1. Claimant

Counsel represented the Claimant at his hearing on February 18, 2016. R. 35. At that hearing, the Claimant was asked by the ALJ about past episodes of bleeding from his face and whether the Claimant had any bleeding episodes since January 2014.  R. 37.  The Claimant indicated that he did not have further episodes.  R. 38.  The ALJ questioned the Claimant regarding medical treatment and the Claimant indicated that he had his knees, hips, and back examined by physicians.  R. 38-39.  The Claimant indicated that he was told by physicians that he would eventually need a hip replacement and would need to have both knees replaced.  R. 39.  The Claimant further testified that he had surgery on his right knee for a torn meniscus, but that the knee still had bone-on-bone contact and was still was painful.  R. 39.  In regard to pain in his knees, the Claimant testified that he had learned to deal with the pain.  R. 40.  The ALJ inquired as to the Claimant's ability to walk without pain and the Claimant testified that he was able to walk a block and a half and back again, but at that point he would begin to feel severe pain in his knees, back, and left hip.   R. 40-41.  The ALJ inquired as to why the treating physician's notes indicated that the goal was to postpone the knee replacements and the Claimant indicated that the knee replacements were going to be postponed until

the Claimant lost sufficient weight.  R. 41-42.  The ALJ asked the Claimant if he was trying to lose weight so that he could have his knee replacement surgery and the Claimant indicated that he had lost 20 pounds.  R. 42.  The ALJ asked the Claimant why he declined an offer for a referral to a dietician and the Claimant indicated that he thought he could lose the weight on his own.  R. 42.  The Claimant testified that after his surgery he completed six or seven weeks of physical therapy and that he continued to do physical therapy exercises once or twice a week.  R. 41, 44, 48.  The Claimant testified that he took ibuprofen and occasionally used a heating pad for pain.  R. 45-46.

The Claimant testified that he needed to use a cane about two to three times a week due to pain and needed to use a cane to go up and down stairs.  R. 44-45.  The Claimant testified that he went to the grocery store about twice a month with a friend.  R. 46.  The Claimant also testified that his neighbor did his laundry for him and performed minor chores for him.  R. 46-47.  The Claimant testified that he smoked approximately a pack of cigarettes a day.  R. 47.  The Claimant testified that he had a valid driver's license and a vehicle, and would typically drive to the grocery store or a friend's house.   R. 47.  The Claimant testified that he was able to dress himself and bathe himself.  R. 49.  The Claimant indicated that he had difficulty picking up some things that he dropped on the floor and indicated that it was a struggle to put on socks and shoes, but that he was able to perform such tasks on his own.  R. 49.  In regard to prior work, the Claimant indicated that as a

concrete stone finisher, he poured and framed the concrete, but that he did not read blueprints.  R. 51.

## 2. Vocational Expert

A vocational expert, Tobey Andre, also testified at the hearing.  She categorized the Claimant's past work as medium and heavy work that was mostly skilled.  R. 50. Ms. Andre initially indicated that, as a concrete stone finisher, the Claimant should have been able to read blueprints, which was a transferable skill from light work.  R.50.  However, upon questioning of the Claimant by the ALJ, it was determined that the Claimant performed the job at a much lower level and did not know how to read blueprints.  R. 50-51.  The ALJ provided Ms. Andre with a hypothetical for an individual who could be on his feet up to four hours a day, could lift 10 pounds frequently, and lift 20 pounds occasionally.  R. 52.  Ms. Andre indicated that there were light work jobs at the unskilled level that existed in the economy that such a person could perform. R. 52-54.

## C. Medical Evidence

The record indicates that the majority of the medical evidence was submitted before the February 18, 2016, hearing.  The record also indicates that the Claimant supplemented the record after the hearing and before the ALJ's decision.  R. 57; (Dkt. #12-1).

The medical evidence includes emergency room treatment records for a visit by the Claimant on November 19, 2013. R. 299. The Claimant was treated at the emergency room for reoccurring nose bleeds. R. 300. The medical evidence also includes a report from Psychology Consultants, P.C. prepared by John L. Peggau, Psy.D. R. 310. The report indicates that the Claimant suffered from depression and anxiety because of his physical condition and because he could not obtain employment. R. 312. The report diagnosed the Claimant with the following: 305.1 Nicotine Use Disorder-2ppd for 35 years; Morbid Obesity; Polysubstance and Alcohol Dependence in long remission; 301.9 Unspecified Personality Disorder. R. 313.

The medical evidence also includes a report for a medical examination of the Claimant on December 20, 2013, prepared by K.P. Ramchandani, M.D. at One Eleven Medical Clinic. R. 315. The report diagnosed the Claimant with the following: arthralgia of lumber spine, knee joints, elbow and shoulder joints; post traumatic arthritis of ankle joints; uncontrolled HTN; and peripheral neuropathy. R. 317. The report also included range of motion results for the Claimant. R. 319-21. The medical evidence also includes reports for X-rays of the Claimant's right ankle and right knee on January 10, 2014. R. 323-24. The medical evidence also includes reports for X-rays of the Claimant's lumbar spine and right knee on March 4, 2014, and a report for an MRI scan of the Claimant's lumbar spine on May 12, 2014. R. 367, 369, 371. The record also includes a report of a pre-surgical orthopedic consultation report and an operative report. R. 379, 381. The medical

evidence also includes emergency room records for the Claimant from January 15, 2014 to January 16, 2014, for hemoptysis, unspecified; tobacco dependence; and uncontrolled hypertension. R. 326-27. Surgery was also performed to treat the Claimant's epistaxis. R. 328.

### 1. Dannenmaier Records

The medical evidence includes office treatment records from SAMG Lundholm Orthopedics for the period of May 22, 2014 to July 10, 2014 regarding treatment by Dr. William C. Dannenmaier. In the notes for a visit on May 22, 2014, Dr. Dannenmaier indicates that the Claimant reported increasing severe pain in his low back and had trouble with his knees. R. 453. The notes indicate that the knee problems were likely aggravated by the Claimant's morbid obesity. R. 453. The notes indicate that the Claimant reported difficulty walking and going up and down stairs, and that he had difficulty bending his legs and flexing his knees. R. 453. The physical examination indicated that the Claimant was morbidly obese and could walk only with obvious discomfort. R. 454. The physical examination also indicated a limited range of motion in the knees, and limited range of motion in the hips. R. 454. The notes indicate that an X-ray examination of the hips showed mild arthritic change in both hips with some minor medial joint space narrowing and spurring in the inferior aspect of the femoral heads. R. 454. The notes further indicate that the X-ray indicated that the knees had bone-on-bone articulation

medially in both knees.  R. 454.  Dr. Dannenmaier also ordered an MRI scan of the Claimant's knees.  R. 454.

In the notes for a visit on June 12, 2014, Dr. Dannenmaier indicated that the Claimant had osteoarthritis of both knees.  R. 398.  The notes further indicate that the Claimant reported pain in both knees, although he reported more pain in the left knee.  R. 398.  Dr. Dannenmaier indicated that he ordered an MRI scan of the Claimant's knees to determine whether there was a surgically remediable solution short of knee replacement.  R. 398.  The notes indicate that the MRI scan showed significant degenerative changes in the left knee and a bucket handle tear of the medical meniscus in the right knee.  R. 398.  Dr. Dannenmaier concluded that treating the meniscus tear in the right knee might make walking a little easier for the Claimant.  R. 398.  Dr. Dannenmaier advised the Claimant to have surgery on his right knee to repair the meniscus tear, pending the clearance by other physicians at Crusader Community Health Loves Park ("Crusader Clinic"), who were also treating the Claimant. R. 398.

In notes for a visit on June 27, 2014, Dr. Dannenmaier indicated that the Claimant had end-stage arthritis in both knees and that the Claimant complained of catching and locking in the right knee.  R. 394.  The notes indicate that a physical examination of the Claimant showed that the Claimant suffered from morbid obesity.  R. 395.  An examination of the right knee indicated pain at the medial and lateral joint lines and that most of the pain was at the lateral join line.  R. 395.  Dr. Dannenmaier advised that he would like to evaluate the right knee

arthroscopically.  R. 395.  Dr. Dannenmaier also indicated that although knee replacements were inevitable, it would be preferable to postpone the replacements. R. 395.

In notes for a visit on July 10, 2014, Dr. Dannenmaier indicated that the Claimant had surgery on his right knee to repair the meniscus tear and that the visit was a surgical follow-up visit.  R. 389.  Dr. Dannenmaier indicated that findings at the time of the arthroscopy included a medial meniscus tear with a fragment, which subluxed in and out of the joint space.  R. 389.  Dr. Dannenmaier also indicated that the Claimant had degenerative change in the medial femoral condyle, medial tibial plateau and patellofermoral joint.  R. 389.  The notes reflect that at that point, the Claimant was having a lot of swelling in both legs and was still quite stiff and walking with a crutch.  R. 389.  Dr. Dannenmaier indicated that he would refer the Claimant to a physical therapist  to increase the Claimant's strength, range of motion, and to try and wean the Claimant off the use of a crutch. R. 390.

### 2.  Crusader Clinic Records

The medical evidence also includes treatment notes from the Crusader Clinic. The notes for the visit on March 3, 2014, indicate that the Claimant reported pain in his back and knees.  R. 359.  There are also records from the Crusader Clinic dated March 4, 2014, indicating that the Claimant did not pick up his medication and there are records dated March 5, 2014, indicating that the Claimant had blurry

vision. R. 350-51, 355. The notes for the visit on March 20, 2014, indicate that the Claimant reported being lightheaded and having a shortness of breath. R. 348. The Claimant also reported back and knee pain. R. 348.

The notes for the visit on June 25, 2014, indicate that the Claimant had come to the clinic for a pre-operative physical for his right knee arthroscopic knee surgery. R.345. The notes indicate that the Claimant was being treated for meniscal injury, knee pain, HTN hypertension, degenerative arthritis of knees, morbid obesity, dyslipidemia, and tobacco addiction. R. 346-47.

The notes for a visit on November 26, 2014, indicate that the Claimant suffered from severe arthritis in his knees and that he had an arthroscopy on the right knee on July 2, 2014. R. 430. The notes also indicate that the Claimant reported that the pain in the right knee had improved since the surgery, but that there was still pain in the knee. R. 430. The Claimant also reported pain in his back and hips. R. 430. The notes further indicate that the Claimant had a poor diet and was not interested in seeing a dietician to address his obesity problem. R. 430. The notes further indicate that the Claimant reported difficulty in exercising due to pain. R. 430. The notes also indicate that the SLR was negative, that the strength was 5/5 in both legs, and that the gait was normal. R. 430.

The notes for a visit on April 24, 2015, indicate that the Claimant continued to experience pain, particularly in his knees. R. 426. The Claimant also indicated that he was experiencing financial difficulties and was suffering from anxiety and depression. R. 426. There is also a record from the Crusader Clinic dated May 1,

2015, indicating that the Claimant was informed by phone that his cholesterol and blood sugar levels had worsened. R. 424. The notes indicate that the clinic offered to refer the Claimant to a dietician and the Claimant declined. R. 424. The notes for a visit on October 7, 2015, indicate that the knee replacement surgery was postponed until the Claimant had lost sufficient weight. R. 421. The notes indicate that the clinic discussed at length with the Claimant the need to lose weight, but the Claimant refused to consult with a dietician. R. 422. The notes indicate that the Claimant suffered from hypertension, obesity, hyperlipidemia, pre-diabetes, tobacco use disorder, and osteoarthritis of knees, bilateral. R. 421. A record from the Crusader Clinic dated October 9, 2015, indicates that the Claimant was informed by phone that his glucose average level was elevated and that he was on the verge of becoming diabetic. R. 420.

D. ALJ's Decision

First, the ALJ found that the Claimant met the insured status requirements of the SSA through June 30, 2014. R. 19. Second, the ALJ found that the Claimant had not engaged in substantial gainful activity since October 29, 2009. R. 19. Third, the ALJ found that the Claimant had the following severe impairments: degenerative joint disease of both knees; mild degenerative lumbar disc disease; mild osteoarthritic changes of both hips; and obesity. R. 19. Fourth, the ALJ found that these impairments did not meet or equal one of the listed impairments. R. 20. Fifth, the ALJ found that the Claimant had a residual functional capacity as follows: The Claimant could stand/walk at least 4 hours in an 8-hour workday; sit

at least four hours in an 8-hour workday; lift/carry at least at least 10 pounds frequently; and lift/carry at least 20 pounds occasionally. R. 21. In making her residual functional capacity determination, the ALJ found that the evidence showed that the Claimant had surgery on his right knee and that the medical evidence did not indicate significant further medical treatment. R. 23-25. The ALJ declined to adopt the opinions of the state agency consultants, finding that the consultants lacked a complete record, and finding that the consultants gave inadequate consideration to the Claimant's obesity. R. 24-25. The ALJ also declined to give any weight to two of Dr. Dannenmaier's opinions because the assessments were made shortly after the doctor first saw the Claimant and were made before the Claimant's knee surgery. R. 25.

## II. LEGAL STANDARDS

A. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). This much is clear regarding the standard of review. If supported by substantial evidence, the Commissioner's factual findings are conclusive. 42 U.S.C. §405(g). If the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision, reviewable by the district court. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). But beyond these axiomatic statements, the courts have provided seemingly conflicting guideposts.

At one end of the spectrum, court opinions have held that the standard of review is narrow. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (review is "extremely limited"). The district court's review is limited to determining whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standard in reaching the decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence exists if there is enough relevant record evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, on review, the courts will give the decision a commonsensical reading and not pick nits. *Rice v. Barnhart*, 389 F.3d 363, 369 (7th Cir. 2004). Moreover, a decision need not provide a complete written evaluation of every piece of testimony and evidence. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). If reasonable minds could differ concerning whether a claimant is disabled, then the court must affirm so long as the decision is adequately supported. *Elder*, 529 F.3d at 413.

At the other end of the spectrum, courts, including the Seventh Circuit, have been careful to emphasize that the review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). For example, a "mere scintilla" is not substantial evidence. *Id.* Moreover, a reviewing court must conduct a critical

review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Mason v. Colvin*, 13 C 2993 2014 U.S. Dist. LEXIS 152938, *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusions." citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th 1006).[1] And, unlike most civil litigation in which a decision can be affirmed on any basis in the record, federal courts cannot do so in Social Security appeals. *Compare Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[T]he *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") *with Brosted v. Unum Life Ins. Co.*, 421 F.3d 459, 467 (7th Cir. 2005) ("[W]e can affirm on any basis in the record"). Therefore, the Commissioner's

---

[1] To further show the seeming conflict, scores of cases rely upon the "logical bridge" analysis and language to remand decisions to the Commissioner. *See, e.g. Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). But the "logical bridge" analysis was never meant to compel a hypercritical approach. *Mueller v. Astrue*, 860 F.Supp.2d 615, 619 (N.D. Ill. 2012). Indeed, the Seventh Circuit has provided the following pedestrian explanation of how an ALJ's decision establishes a logical bridge: "[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

counsel cannot build for the first time on appeal the necessary accurate and logical bridge. *See Parker*, 597 F.3d at 925; *Toft v. Colvin*, 2013 U.S. Dist. LEXIS 72876, *21 (N.D. Ill. 2013) ("[T]he court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rational submitted in the Commissioner's brief."). An exception to the *Chenery* doctrine is the harmless-error doctrine, which allows a court to affirm if the outcome on remand is foreordained. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *see Osmani v. INS,* 14 F.3d 13, 15 (7th Cir. 1994) (harmless error does not require remand "when it is clear what the agency's decision has to be"); *Sahara Coal Co. v. Office of Workers' Compensation Programs*, 946 F.2d 554, 558 (7th Cir. 1991); *see also Parker*, 597 F.3d at 924.  The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand. *McKinzey*, 641 F.3d at 892.


B. Disability Standard

Disability benefits are available to a claimant who can establish that she is under a "disability" as defined in the SSA.  *Liskowitz v. Astrue*, 559 F.3d 736, 739-740 (7th Cir. 2009).  "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  An individual is under a disability if she

is unable to perform her previous work and cannot, considering her age, education and work experience, participate in any gainful employment that exists in the national economy. 42 U.S.C. §423 (d)(2)(A). Gainful employment is work usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. §404.1572(b).

The ALJ uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4)(i – v). Under this analysis, the ALJ must inquire in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's severe impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; meaning whether the claimant can still work despite the claimant's physical and mental limitations, which is referred to as the claimant's residual functional capacity ("RFC"); and (5) whether the claimant is capable of performing work in light of the claimant's age, education and work experience. *Id.*; *see also Liskowitz*, 559 F.3d at 740. After the claimant has proved that she cannot perform her past relevant work due to the limitations, the Commissioner carries the burden of showing that a significant number of jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

### A. Contentions of the Parties

In asserting that the ALJ's decision was not supported by substantial evidence, the Claimant contends that the matter should be remanded for two reasons. (Dkt. #12: 4). The Claimant argues that the ALJ significantly erred in giving no weight to Dr. Dannenmaier's opinions. The Claimant also contends that the ALJ improperly evaluated the other medical evidence.

The Commissioner contends that the ALJ properly discounted Dr. Dannenmaier's opinions because the opinions included legal conclusions and the opinions predated the Claimant's knee surgery. The Commissioner also contends that the ALJ properly considered all other medical evidence including the state agency consultants' opinions.


### B. Analysis

#### 1. Weight Given to Dr. Dannenmaier's Opinions

The Claimant argues that the ALJ erred in assessing the weight that should be given to Dr. Dannenmaier's opinions. Pursuant to the treating physician rule, "a treating physician's opinion 'regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.'" *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)(quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)); *Lalone v. Berryhill*, 2017 WL 1019849, at *6 (S.D. Ill.

2017)(stating that "[t]he ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he or she may 'bend over backwards' to help a patient obtain benefits")(quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)).[2] The ALJ specifically referenced Dr. Dannenmaier's opinion on June 12, 2014, that the Claimant was unable to walk or drive because of his severely arthritic knees, and was therefore substantially disabled. R. 25. The ALJ also referenced Dr. Dannenmaier's opinion on June 27, 2014, that the Claimant was unable to perform the type of heavy laboring work he had performed in the past because of his back and knee pain. R. 25. The ALJ gave such opinions no weight. R. 25. The ALJ indicated that she gave such opinions no weight because the opinions were given shortly after Dr. Dannenmaier first examined the Claimant and because the opinions were given before the July 3, 2014, arthroscopic surgery on the Claimant's right knee. R. 25.

a. Consideration of Regulatory Factors

The Claimant argues that the ALJ failed to consider the required regulatory factors in assessing Dr. Dannenmaier's opinions. In determining the weight that should be accorded to the opinion of a treating physician, an ALJ must consider the factors in 20 C.F.R. § 1527(c)(2), which are the following: "(1) the length of the treatment relationship and the frequency of treatment, (2) the nature and extent of

---

[2] The treating physician rule was abrogated for claims filed after March 27, 2017. A treating physician's opinion is now considered in accordance with prospective regulations in 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. *McFadden v. Berryhill*, 2018 WL 317282, at *3 n.1 (7th Cir. 2018). Such prospective regulations are not applicable in this case.

the treatment relationship, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's specialization, and (6) other relevant factors." *Salas v. Colvin*, 2016 WL 7209803, at *6 (N.D. Ill. 2016). The ALJ, in determining not to give any weight to Dr. Dannenmaier's opinions, failed to specifically address the above-referenced factors. The ALJ's conclusory statement that she "considered opinion evidence in accordance with the requirements of 20 CFR. 1527" was insufficient. R. 21; s*ee also Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014)(stating that "[t]he ALJ . . . should have addressed these factors in her opinion to enable [the Court] to review whether she engaged in the correct methodology"). On remand, the ALJ should address the required regulatory factors in assessing the weight to be given to Dr. Dannenmaier's opinions.

### b. Legal Conclusions

The Commissioner argues that the ALJ was not required to accept Dr. Dannenmaier's legal conclusion that the Claimant was disabled. It is true that Dr. Dannenmaier opined in his notes for the June 12, 2014, visit that he believed that the Claimant was "substantially disabled." R. 398. The Court recognizes that this opinion is a legal conclusion, which was ultimately reserved for the Commissioner. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (7th Cir. 2010); 20 C.F.R. §404.1527(d)(1). But the Claimant on appeal is not arguing that the ALJ was required to adopt that legal conclusion. Rather, the Claimant contends that Dr. Dannenmaier's factual

opinions, particularly those regarding the impairments in the Claimant's knees, should have been given some weight by the ALJ. An ALJ cannot completely disregard all medical opinions that accompany an improper legal conclusion reserved for the Commissioner, but must consider the medical opinions and give those opinions the appropriate weight. *See Stroud v. Colvin*, 14 CV 52, 2015 U.S. Dist. LEXIS 13692, *18 (N.D. Ill. 2015) citing *Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013).

### c. Speculation as to Improvement

The ALJ's main reason for discounting Dr. Dannenmaier's opinions was that the opinions predated the Claimant's knee surgery and the Claimant's condition might have significantly improved after his surgery. The ALJ speculated that "the absence of significant treatment after the surgery suggest[ed] that the claimant obtained at least some relief." R. 25. Even if that were a possible inference from the evidence, it does not provide an adequate basis to take the drastic step of discounting Dr. Dannenmaier's opinions in their entirety.[3] The ALJ could and should have inquired further as to the Claimant's condition and treatment after the knee surgery, particularly in light of the evidence in the record indicating that the

---

[3] The Commissioner argues that the ALJ properly noted that the Claimant was only using ibuprofen to treat pain after his surgery. (Dkt. #17: 6); R. 24. However, the medical evidence indicates that the Claimant was taking ibuprofen for pain before he had the knee surgery and thus the fact that he was taking it after did not indicate any improvement in his condition. R. 399. In addition, the record actually indicates that the Claimant was taking a higher dosage of ibuprofen after his surgery than he was taking prior to his surgery. R. 45, 399-400.

knee surgery was only intended to be a temporary fix and provide a minor improvement to the Claimant's knee condition.

The ALJ herself appeared to recognize the absence of a complete record regarding the post-surgery period. The ALJ acknowledged that there was "scant evidence about the extent to which that surgery improved the claimant's ability to stand/walk, sit and lift/carry. . . ." R. 25. In noting that there were few post-surgery medical records, the ALJ indicated that there was "limited evidence" regarding how much the knee surgery improved the Claimant's knee condition. R. 23. If the ALJ believed that there were insufficient evidence in the record regarding such a key issue, the ALJ was duty bound to inquire further and develop the record. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015)(stating that "[t]he ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that [the Court] can follow her reasoning"). Instead, the ALJ speculated in the absence of evidence and made inferences against the Claimant, concluding that although there was "limited evidence about the extent to which the arthroscopic knee surgery helped, . . . the record provides virtually no evidence that it did not." R. 24. Apparently, the lure of playing doctor was too much for the ALJ to ignor in this case, as the ALJ's speculation was not supported by a medical opinion. As the Seventh Circuit has repeatedly and consistently held for over two decades, ALJs may not play doctor and speculate on medical issues, such as causation, absent a supporting medical opinion. *Engstrand v. Colvin*, 788 F. 3d 655, 660-61 (7th Cir. 2015); *Goins v. Colvin*, 764 F. 3d 677, 680

(7th Cir. 2014); *Moon v. Colvin*, 763 F. 3d 718, 722 (7th Cir. 2014); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7h Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Dr. Dannenmaier was a specialist who examined the Claimant's knees on multiple occasions. The ALJ did not provide sufficient justification to deem all evidence from such a key source of information irrelevant, particularly in the absence of medical evidence that contradicted Dr. Dannenmaier's opinions. The ALJ also noted that although there was no evidence of physical therapy after the Claimant's knee surgery, the Claimant testified that he did pursue such therapy. R. 24. On remand, the ALJ should fully develop the record regarding the Claimant's treatment and condition after the knee surgery.

The Commissioner argues that if there were insufficient evidence as to the Claimant's condition or treatment after his surgery, the fault falls upon the Claimant, not the ALJ, because it is the Claimant's burden to present evidence to show he was disabled. But the Claimant presented evidence to show that he was disabled even after his surgery. The Claimant could not have been not required to anticipate that the ALJ would speculate that the Claimant's condition had improved to such a great extent after his knee surgery that the ALJ would find all evidence from his treating physician predating the knee surgery to be irrelevant. If the ALJ concluded that there were an absence of evidence regarding such a key period, the ALJ should have expanded the record and the Claimant should have been provided with an opportunity to supplement the record.

d.  Dr.  Dannenmaier's Other Opinions

The ALJ was also unclear as to the weight he gave to Dr. Dannenmaier's other opinions that were not specifically referenced in the ALJ's decision.  In her decision, the ALJ specifically referenced the two above-referenced opinions of Dr. Dannenmaier and then indicated that she gave "th[o]se assessments" no weight.  R. 25.  But the ALJ did not clearly indicate in general what weight she gave to Dr. Dannenmaier's other opinions.  The two selected opinions of Dr. Dannenmaier were not the only opinions that he presented in the medical evidence.  For example, Dr. Dannenmaier opined in the notes for the May 22, 2014, visit that the Claimant had pain essentially with every step and that ambulation limited his ability to walk.  R. 453.  The notes also indicate that the Claimant had knee arthritis and that X-rays showed bone-on-bone articulation medially in both knees.  R. 453-54.  In the notes for the June 12, 2014, visit, in addition to the assessments pointed out by the ALJ, Dr. Dannenmaier opined that he thought the knee surgery to repair the meniscus tear would only make walking "a little easier."  R. 398.  Dr. Dannenmaier did not indicate that he perceived the knee surgery as a solution to the end state arthritis in his bilateral knees.  Subsequently, Dr. Dannenmaier opined in the notes for the June 27, 2014, visit that the Claimant's knee conditions was such that knee replacement was "inevitable."  R. 395.  After the knee surgery, Dr. Dannenmaier examined the Claimant and in the notes for the July 10, 2014, visit Dr. Dannenmaier did not indicate that the results of the surgery had caused the doctor to change his prior opinion that that the Claimant was substantially impaired in

regard to his knees. There was, in fact, evidence in the surgery report itself indicating that the Claimant would continue to have serious problems with his right knee even after the surgery. Dr. Dannenmaier indicated, for example, that his arthroscopic examination of the knee revealed grade 2 and 3 degenerative change. R. 381. It is unclear from the ALJ's decision what weight she gave to Dr. Dannenmaier's opinions other than the two specifically mentioned by the ALJ. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)(stating that "[w]hen an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what value the treating physician's opinion merits"). The ALJ correctly noted in her decision that Dr. Dannenmaier did not submit specific RFC assessments, but that did not justify giving no weight to Dr. Dannenmaier's opinions or excuse the need for the ALJ to indicate the weight accorded to Dr. Dannenmaier's opinions. R. 25. On remand, the ALJ should clarify what weight she gives to each of Dr. Dannenmaier's opinions or at least provide a statement indicating cumulatively what weight she is going to give to his opinions.

### 2. Evaluation of Other Medical Evidence

The Claimant argues that the ALJ failed to properly evaluate other medical evidence. The Claimant contends that the ALJ gave too much weight to certain evidence relating to the Claimant's knees, that the ALJ erred in concluding that the Claimant had a normal gait, that ALJ failed to properly consider the Claimant's

obesity, and that the ALJ failed to indicate the weight given to the opinions of the state agency consultants.

### a. Evidence Relating to Claimant's Knee Condition

The Claimant argues that the ALJ gave too much weight to certain evidence relating to the Claimant's knees.   Although an ALJ is not required to "discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(stating that "[t]he ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected"). As the Claimant points out, the ALJ in evaluating the Claimant's knees appeared to primarily rely on evidence that the straight leg raise test was negative and that the Claimant had a 5/5 strength rating in both legs.  R. 23.   The Claimant argues that the straight leg raise test is mostly used to diagnose nerve issues such as a herniated disc and would not be particularly helpful in evaluating knees for the type of bone-on-bone degenerative arthritis presented in this case.   There is support for Claimant's position.  *See, e.g., Carlantone v. Colvin*, 2015 WL 9462956, at *2 n.7 (S.D.N.Y. 2015)(explaining purpose of straight leg raise test).  The Claimant also argues that any leg strength tests would be less relevant than tests specifically targeting knees or examinations of the knees such as those performed by Dr. Dannenmaier.  The ALJ did not appear to give as much weight to evidence in the record indicating substantial limitations in the Claimant's knees.

The ALJ did not adequately explain her decision to give more weight to certain types of evidence in assessing the Claimant's knee condition. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)(indicating that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)(stating that "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so"). To the extent that the ALJ desired to understand the importance of certain medical tests or findings, the ALJ should have developed the record further and consulted with a medical expert.

### b. Conclusion that Claimant had a Normal Gait

The Claimant argues that the ALJ erred by concluding that the Claimant had a normal gait after the knee surgery. R. 23. The Claimant points to evidence in the record that indicates that at times before the knee surgery on his knee the Claimant did not have a normal gait. For example, the Claimant points out that on May 22, 2014, Dr. Dannenmaier indicated that the Claimant was walking with obvious discomfort. R. 454. The Claimant also points out that after his surgery, Dr. Dannenmaier indicated in the notes for the July 10, 2014, visit that the Claimant was quite stiff while walking and was walking with one crutch. R. 390. However, in those same notes, Dr. Dannenmaier indicated that the Claimant's difficulty in walking was the result of the surgery, not necessarily any permanent impairment that impaired the Claimant's gait. R. 390. The notes also indicate that Dr.

Dannenmaier was going to refer the Claimant to physical therapy to "try to wean him off the crutch. . . ." R. 390. In the notes for a later visit at the Crusader Clinic on November 26, 2014, the examination notes indicate that the Claimant had a normal gait. R. 430. Although as indicated above, there is evidence in the record indicating that the surgery only provided the Claimant with a temporary and minor improvement to his knee, the ALJ could reasonably have concluded that the Claimant had a normal gait after his surgery. Thus, the evidence is not such that the court can conclude that the ALJ erred in finding that by November 2014, after the surgery and physical therapy, that the Claimant had a normal gait.

### c. Consideration of the Claimant's Obesity

The Claimant argues that the ALJ failed to properly consider the Claimant's obesity. The Claimant argues that the ALJ did nothing more than provide boilerplate language regarding the Claimant's obesity. The record, however, clearly indicates that the ALJ gave considerable thought to the Claimant's obesity. For example, the Claimant's obesity caused the ALJ to reject the opinions of the state agency consultants. The ALJ found that the state agency consultants "gave inadequate weight to the effect of the claimant's persistent morbid obesity on his capacity to stand/walk." R. 25. The ALJ accordingly adjusted the Claimant's RFC to better account for the Claimant's obesity. R. 25. The ALJ also gave a detailed recitation regarding the Claimant's obesity, indicating the Claimant's BMI and indicating that the Claimant falls at the morbid obesity level. R. 24. The ALJ was

not required to discuss in detail every piece of evidence that might have pertained to the Claimant's obesity. Thus, the Claimant has not shown that the ALJ failed to properly consider the Claimant's obesity.

### d. Weight Given to Opinions of State Agency Consultants

The Clamant argues that the ALJ failed to indicate the weight given to the opinions of the state agency consultants. The Commissioner contends that the ALJ "partially credited" the opinions of the state agency consultants. (Dkt. #17: 4). However, the ALJ made no such representation in her decision. The ALJ declined to adopt the opinions of the state agency consultants, finding that the consultants did not have a complete record when forming their opinions, and finding that the consultants failed to properly consider the Claimant's morbid obesity. R. 25. The ALJ then fashioned her own set of limitations in regard to the amount of time that the Claimant could stand/walk and sit in an eight-hour period. R. 25. It is unclear what weight, if any, the ALJ gave the to the opinions of the state agency consultants. On remand, the ALJ should specify the weight given to such opinions.

Based on the above, the ALJ erred in part and the Claimant has shown that the ALJ's overall decision was not supported by substantial evidence. Therefore, the Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The matter is remanded to the Commissioner.

## IV. CONCLUSION

For the reasons stated above, the Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The matter is remanded to the Commissioner.

It is so ordered.

Entered: March 7, 2018

**Iain D. Johnston**
**U.S. Magistrate Judge**